NO. 12-01-00178-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


MARIN GONZALEZ,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 Marin Gonzalez appeals his conviction for aggravated sexual assault of a child. The jury
sentenced Appellant to life in prison and assessed a $10,000.00 fine. In two issues, Appellant asserts
the conviction cannot stand because venue was not established and because the evidence is factually
insufficient to support the conviction. We affirm.

 Rosa Gonzalez, Appellant's wife, explained that she was babysitting her sister's four-year
-old daughter, A.T., on the afternoon of November 15, 2000. Appellant came home from work at
4:30 p.m., ate dinner, and went into the bedroom to change clothes so he could return to work. A.T.
wanted to show Appellant that she had learned to hopscotch that day so she went into the bedroom. 
After five or ten minutes, Mrs. Gonzalez went into the bedroom. She saw A.T. lying on the bed face
down, with her pants and underwear around her knees. Appellant was standing behind her, closing
the zipper on his pants. He did not respond when she asked what he was doing. He left the house
quickly. A.T. started crying and saying that her uncle wanted to do something and that she did not
want to. A.T. told her Appellant touched her in her coleta, meaning vagina, with his fingers. She
said he put lotion inside her with his fingers. When Mrs. Gonzalez's sister arrived to pick up A.T.,
they called the police. Mrs. Gonzalez testified that her marriage had not been good. She and
Appellant fought a lot and he has been verbally, physically, and sexually abusive. She planned to
divorce him even before this offense occurred. She denied making up the allegations against
Appellant because of difficulties in her marriage.

 A.T., five years old at the time of the trial, testified as to the events of November 15, 2000. 
She had been excited about learning to hopscotch and told her aunt and then went to tell her uncle. 
She explained that he touched her in the front and she indicated on a diagram where he touched her. 
She said he touched her with his "tail" that is in front. He put lotion inside her, it hurt, and she cried. 
She also said he had touched her like this five other times.

 Officer Bart Lemons of the Tyler Police Department was the first officer on the scene. He
arrived just one-and-a-half hours after the incident. A.T. told him Appellant pulled her pants down,
rubbed lotion on her buttocks with his penis, and she thought he put his fingers inside of her. She
pointed to her vagina as she explained. He asked her if this had happened before and she said that
it had.

 Officer Jeffrey Rackliff, a crime scene investigator, took pictures of the bedroom but stated
that no body fluids were found. He collected a maroon blanket and a maroon and white blanket for
testing. 

 Officer Craig Shine was the only officer at the scene when Appellant returned later that
evening. After other officers arrived, Officer Shine told Appellant of the allegations made against
him. Appellant denied any wrongdoing. Appellant told Officer Shine he had been playing with A.T.
and his son by throwing them up in the air and letting them land on the bed. However, Officer Shine
testified that the bed was tightly made, with no wrinkles except for the area identified as the area
where the offense occurred. Officer Shine obtained an arrest warrant and a search warrant and
collected hair, saliva, and blood samples from Appellant.

 David Davenport, a criminalist with the Department of Public Safety Crime Lab, testified as
to the results of testing he did on items sent to him. He stated that the tests for blood on vaginal
swabs of the victim were weakly positive, but no semen was found on anything he tested. He found
red fibers on the victim's debris collection swab which came from her pubic region and a red fiber
cluster on Appellant's boxer shorts. 

 John Donahue, also a criminalist with the Department of Public Safety Crime Lab, explained
that the DNA found on the victim's panties and debris collection swab matched the victim's DNA. 
He detected no DNA from Appellant on any items he tested.

 The State's final witness was Donna Friederich, a sexual assault nurse examiner at Mother
Frances Hospital. She saw A.T. the evening of the offense. A.T. told her she went into Appellant's
room to show him she learned to hopscotch in school that day. When she walked into the room he
said, "Your butt looks delicious." A.T. told him to "shut up." He then took his pants off and took
her clothes off. He sucked with his mouth in her "that," held her tight, and hurt her. He put Mrs.
Gonzalez's lotion on his hands and fingers and put them "in there." A.T. pointed to her vaginal area
as she explained. A.T. said Appellant, who did not have his underwear on, pushed her on the bed
and put something round and hard like a big finger in her mouth. 

 Ms. Friederich explained in great detail the thorough examination she performed on A.T. 
She found a red rash on A.T.'s chin and a reddened area underneath her left arm. A vaginal exam
revealed scratches on the right side of the labia majora, with swelling and redness. There was a
three-centimeter scratch on the lower right side of the labia minora. She also found two blisters on
the hymen which had to have been caused by a rubbing action, or friction. She characterized what
she found as minor trauma, rare in children because they are resilient and their skin is elastic. She
noted that, in a child this age, it takes quite a lot of trauma to make markings of this sort. She also
stated that the trauma she found is consistent with the history she had been given. She testified that
there was penetration of A.T.'s female sexual organ.

 Appellant presented two witnesses. Theresa Lilly, office manager of Lilly Machinery,
testified that Appellant had been an employee of Lilly Machinery. According to her records, he
worked on November 15, 2000. He clocked in just before 6:00 a.m. and clocked out at 1:30 p.m.
that day. 

 Ray Bradshaw testified that he helps supervise needed work at the Woodridge subdivision
where he lives. He explained that he had known Appellant for eight or nine years and Appellant had
done some work for Woodridge, as well as for Mr. Bradshaw personally at his home. He produced
a handwritten note to himself indicating that Appellant worked three hours for Woodridge on
November 15, 2000. The note did not indicate the time of day or specific hours worked. Mr.
Bradshaw testified that Appellant began working about 2:00 or 2:30 that day and spent three hours
working on outside lights in the subdivision. Then, after he finished the three hours for Woodridge,
Appellant worked an estimated one-and-a-half to two hours for Mr. Bradshaw. He stated that he
was not positive of the time Appellant began working that day because he did not write it down. Mr.
Bradshaw also testified that Appellant worked until 6:30, 7:00, or 7:30 that evening. He later
admitted that all times he testified to are "approximations." He explained that while working for
him, Appellant parked his truck in front of Mr. Bradshaw's house. The truck was there off and on
all afternoon. Appellant could have driven down the street to the light poles he worked on. 
However, he was certain the truck was never gone for as long as an hour at a time.

 In his first issue, Appellant asserts the State failed to prove that the offense, if any, was
committed in Smith County, Texas. He argues that venue is an essential element of the offense and
the State offered no evidence to prove that element. Therefore, his argument continues, the evidence
is legally insufficient to support the jury's verdict.

 A plea of not guilty puts in issue the allegations of venue, and the State must prove such
allegations by a preponderance of the evidence or the conviction will not be warranted. Tex. Code
Crim. Proc. Ann. art. 13.17 (Vernon 1977); Black v. State, 645 S.W.2d 789, 790 (Tex. Crim. App.
1983). Proof of venue can be demonstrated by either direct or circumstantial evidence. Black, 645
S.W.2d at 790. However, venue is not a "criminative fact" and thus, not a constituent element of
the offense. Fairfield v. State, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981).

 Officer Bart Lemons, the first officer on the scene the evening of November 15, 2000, gave
the address of the location where the alleged aggravated sexual assault occurred and stated that it is
located in Smith County, Texas. Officer Jeffery Rackliff, a crime scene investigator, was responsible
for taking pictures. One picture he identified in court was a view of the front of the house where the
offense occurred. He stated the street address and that it was located in Smith County, Texas. 
Further, Officer Craig Shine, a Crimes Against Children investigator with the Tyler Police
Department, asserted in his affidavit submitted in support of the arrest warrant that the alleged
offense occurred in Smith County, Texas. Accordingly, venue was proven by at least a
preponderance of the evidence. See Black, 645 S.W.2d at 790. We overrule Appellant's issue one.

 In his second issue, Appellant asserts the evidence is factually insufficient to support the
conviction. He points out that even though the victim was taken to the hospital and examined shortly
after the alleged offense, there is an absence of scientific or physical evidence, such as saliva, blood,
or semen, linking him to the offense. Further, there is no evidence of lotion on or in the victim. He
argues that the testimony of his disgruntled wife, which corroborates the victim's identification
testimony, should be disregarded. Appellant contends he could not have committed the offense
because, as the record shows, he was at work at the time. Further, a number of other persons lived
in his home at the time of the alleged offense and all of them had access to the victim.

 When reviewing the factual sufficiency of the evidence, we consider whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). In conducting this analysis, our duty is to examine the trier of
fact's weighing of the evidence. Johnson, 23 S.W.3d at 7. We consider all of the evidence in the
record related to an appellant's sufficiency challenge, comparing the weight of the evidence that
tends to prove guilt with the evidence that tends to disprove it. See id. However, because the jury
is the sole judge of the facts, we must give deference to jury findings. Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). What weight to give contradictory testimonial evidence is within
the sole province of the jury because it turns on an evaluation of credibility and demeanor. Id. at
408-09. The indictment alleged, and thus the State was required to prove beyond a reasonable doubt,
that Appellant intentionally or knowingly caused the penetration of the female sexual organ of A.T.,
a child younger than fourteen years of age, by his sexual organ or by his finger, or that Appellant
intentionally or knowingly caused the female sexual organ of A.T. to contact Appellant's male
sexual organ. See Tex. Pen. Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2000).

 Rosa Gonzalez testified that she saw Appellant standing over A.T., zipping up his pants,
while A.T. was face down on the bed, partially unclothed. A.T. told Mrs. Gonzalez, Officer Lemons,
Ms. Friederich, and the jury that Appellant put his fingers inside her vagina. A.T. also told Ms.
Friederich that he put something round and hard like a big finger in her mouth. Ms. Friederich, a
nurse specially trained to examine sexual assault victims, who had thoroughly examined A.T. within
hours of the assault, testified that she found evidence of trauma indicating that A.T.'s female sexual
organ had been penetrated.

 The jury could find Appellant guilty based on the testimony of an eyewitness, the victim, and
a medical expert who collectively presented evidence that Appellant sexually assaulted four-year-old
A.T. In light of such strong evidence of guilt, scientific or physical evidence, such as saliva, blood,
or semen, is not necessary in order for the jury to find Appellant guilty of the aggravated sexual
assault of A.T. Although A.T. testified that Appellant put lotion inside her, the fact that there is no
scientific evidence of lotion on or in the victim is insufficient to overcome the evidence of guilt. 
Appellant's assertion that we should disregard Mrs. Gonzalez's testimony because she is
"disgruntled" was appropriately considered by the fact finder. The jury, as fact finder, was entitled
to consider that her husband was abusive and she planned to divorce him and give those facts the
weight it felt appropriate. See Cain, 958 S.W.2d at 407. The jury could have determined that, even
if she was "disgruntled," she told the truth about the offense against A.T. Further, even if Mrs.
Gonzalez's testimony is disregarded, the remainder of the evidence is sufficient to support the
conviction.

 Additionally, Appellant's evidence of alibi is insufficient to overcome the proof of guilt. Mr.
Bradshaw was not able to say for certain the exact time period Appellant worked on November 15,
2000. His written documentation merely stated that Appellant worked for a total of three hours for
Woodridge on November 15, 2000. He had no written documentation that Appellant worked for him
personally on that day. Further, he could not remember the exact amount of time Appellant worked
for him, the exact hours he worked, or even Appellant's last name. Mr. Bradshaw's testimony was
indefinite and he admitted all times were "approximations." We note also that Appellant's alibi
evidence, that he was working at the time of the offense, is at odds with the explanation he gave to
Officer Shine on the evening of the offense, that he had been innocently playing with A.T. and his
son at the time of the alleged offense. Again the jury was entitled to resolve this conflict. See id.

 Finally, although Mrs. Gonzalez testified that at times other male family members lived in
their house or stayed at their house, there was no testimony that any adult male other than Appellant
was present on November 15, 2000. This allusion to the possibility that others might have access
to A.T. does not in any way diminish the strong evidence against Appellant.

 After examining all the evidence in a neutral review and giving deference to the jury's
verdict, we conclude that the jury's verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 129. Moreover, from our neutral
review of all the evidence, we find it fails to show that the proof of Appellant's guilt is so obviously
weak as to undermine confidence in the jury's determination, or that the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11. The
evidence is factually sufficient to support the jury's verdict. We overrule Appellant's second issue.

 We affirm the trial court's judgment.



 SAM GRIFFITH 

 Justice




Opinion delivered July 10, 2002.

Panel consisted of Gohmert, C.J., Worthen, J., and Griffith, J.






















(DO NOT PUBLISH)